<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| CURTISS-WRIGHT CORPORATION, | : | Honorable Madeline Cox Arleo |
| | : | |
| Plaintiff, | : | Civil Action No. 11-4416 (SDW) |
| | : | |
| -v- | : | |
| | : | **REPORT AND RECOMMENDATION** |
| CNA FINANCIAL CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ARLEO,** U.S.M.J.

This matter comes before the Court upon the motion of defendants CNA Financial Corporation ("CNAF") and Continental Casualty Company ("Continental") (sometimes collectively defendants) to dismiss CNAF as a defendant, (Dkt. No. 2), as well as the cross-motion of Curtiss-Wright Corporation ("plaintiff") to remand the pending insurance coverage action to the Superior Court of New Jersey, Law Division, Morris County. (Dkt. No. 8). District Judge Wigenton referred both motions to me for Report and Recommendation.

This Court held oral argument on January 11, 2012, and the Court reserved ruling from the bench. This written opinion supplements the transcript of the January 11, 2012, hearing, pursuant to LOCAL CIVIL RULE 52.1. Having considered the parties' submissions, for good cause shown, and for the reasons set forth on the record and herein, this Court recommends that the motion to dismiss CNAF as a party defendant be **GRANTED**, and that plaintiff's cross-motion to remand be **DENIED**.

I.      **BACKGROUND**

As alleged in the Complaint, CNAF, an insurance holding company, and/or its subsidiary, Continental, sold a commercial property policy of insurance to plaintiff covering the period from July 1, 2008 through July 1, 2009 and a renewal policy from July 1, 2009 through July 1, 2010 (hereinafter "the Policy"). (Compl. at ¶¶ 1, 2, 7). The Policy provides coverage against all risks of direct physical loss or damage to covered property unless a specific risk or type of damage is excluded or limited. (Id. at ¶¶ 8, 9).

Plaintiff, a designer and manufacturer of highly engineered, advanced technologies that perform critical functions, supplies, among other products, reactor coolant pumps, seals, motors, and control rod drive mechanisms. (Id. at ¶¶ 5, 6). In 2008, plaintiff contracted with the United States Navy for the production of a Main Coolant Pump. (Id. at ¶ 12). On June 25, 2010, plaintiff's broker submitted notices of loss to defendants for two incidents. (Id. at ¶ 57). The first incident occurred on January 6, 2009, involving lead contamination to the pump being manufactured and tested by plaintiff's employees. (Id. at ¶¶ 13-15, 57). The second incident occurred on April 1, 2010 and involved sand contamination in another pump being tested by plaintiff. (Id. at ¶¶ 52-57).

On February 2, 2011, Continental denied coverage for the January 6, 2009 lead incident, relying on a contamination exclusion. (Id. at ¶¶ 62-63). On May 25, 2011, CNAF denied coverage for the sand contamination claim. (Id. at ¶ 64).

On June 6, 2011, plaintiff filed suit against defendants in superior court, arising out of this coverage dispute, asserting claims for declaratory judgment and breach of contract. On July 29, 2011, defendants removed the action based on diversity jurisdiction.

In its removal petition, defendants assert that as between plaintiff (a Delaware corporation) and defendant Continental (an Illinois corporation) there is complete diversity and the amount in controversy exceeds $ 75,000. Although there is not complete diversity between plaintiff and CNAF (a Delaware corporation with its principal place of business in Illinois), defendants contend the citizenship of CNAF should be disregarded for purposes of determining whether diversity jurisdiction exists. In support of their position, defendants assert that CNAF was fraudulently joined as a defendant in that the Policy was issued by Continental not CNAF who did not issue any policy and is not authorized to issue policies of insurance in New Jersey. (See generally Notice of Removal and Exh. B thereto). Thus, according to defendants, there is no reasonable basis in fact or colorable ground supporting any such claims against CNAF.

## II.   THE PARTIES' MOTIONS

In support of their motion to dismiss CNAF, defendants primarily reiterate their fraudulent joinder argument, and alternatively argue that this Court lacks personal jurisdiction over CNAF as it does not conduct any business in New Jersey and is not registered in the state to conduct same.

There is no dispute that defendants timely removed the case. Rather, plaintiff argues in opposition to dismissing CNAF from the case, and in support of its cross-motion to remand, that the court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because there is no complete diversity in that CNAF was not fraudulent joined in this action. Plaintiff contends that CNAF controls the operations of Continental, its subsidiary, and thus is liable to plaintiff under an alter ego theory of liability. Plaintiff alternatively argues that even if there is subject matter jurisdiction under 28 U.S.C. § 1332, the Court should decline to exercise its discretionary jurisdiction to hear this action, and remand it to state court under the Declaratory Judgment Act, 28 U.S.C. § 2201.

### III. DISCUSSION

#### A. Legal Standards

In a diversity action, a district court has subject matter jurisdiction over state law claims, pursuant to 28 U.S.C. § 1332, if each of the plaintiffs is a citizen from a state different from each defendant and the amount in controversy exceeds $75,000. See Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d. Cir. 2002). A claim brought in state court may be removed to federal court under 28 U.S.C. § 1441.

A party may seek to remand a civil action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). A party opposing remand must show that federal subject matter jurisdiction exists and removal was proper. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert. denied, 498 U.S. 1085 (1991). The Third Circuit has held that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)). Thus, in opposing a motion to remand based on lack of subject matter jurisdiction, the removing parties, here defendants, bear this burden. Accordingly, "a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a 'heavy burden of persuasion.'" Boyer, 913 F.2d at 111 (quoting Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)).

The Third Circuit has made clear that where a non-diverse party has been fraudulently joined, remand should be denied. In Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985), the Third Circuit stated that joinder is considered fraudulent "where there is no reasonable basis in

fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." For a claim to be uncolorable, "it must be wholly insubstantial and frivolous." Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1985).

Significantly, for purposes of determining diversity, the Supreme Court has emphasized that only parties with whom the plaintiff has a "real and substantial" controversy may be considered. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Id.

In analyzing fraudulent joinder, a court may look beyond the pleadings "to identify indicia of fraudulent joinder." In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006). Yet, "a district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'" Id. (quoting Boyer, 913 F.2d at 112). Accordingly, although a court may look outside the pleadings to determine whether joinder is fraudulent, the court must remember that "the inquiry into the validity of the complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder." Batoff, 977 F.2d at 852.

In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of '"entitlement to relief."'

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57) (internal citations omitted).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted).

As a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted). However, there exists an exception to that general rule in that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" Cooper v. Samsung Electronics Am., Inc., 374 F. App'x 250, 253 n.3 (3d Cir. Mar. 30, 2010) (quoting Pryor, 288 F.3d at 560).

**B.    Analysis**

As a threshold issue, the Court notes that consistent with Third Circuit precedent, it may consider contents outside of plaintiff's Complaint to determine whether subject matter exists based

on diversity jurisdiction and whether plaintiff states a claim against CNAF. See Cooper, 374 F. App'x at 253 n.3; In re Briscoe, 448 F.3d at 219. Here, the Complaint explicitly refers to the Policy, plaintiff's notices of loss, and Continental's two declination of claim letters, which are all central to plaintiff's breach of contract and declaratory judgment claims. Indeed, these legal claims are predicated on the terms and conditions of these documents. Additionally, defendants attach these documents to their Notice of Removal which is referenced in the motion to dismiss. As such, the Court reviews these documents in connection with its analysis of the parties' respective motions.

       1.    *Diversity Jurisdiction*

The Court next considers whether it has subject matter jurisdiction over the removed action. In support of removal, and in opposing remand, defendants assert that diversity of citizenship exists in that there is complete diversity of citizenship between the "proper" parties (i.e., plaintiff and Continental), and that plaintiff's claims exceed $75,000. Defendants contend that plaintiff fraudulently joined CNAF, which had not involvement or connection to the Policy central to the parties' dispute and thus, there is no reasonable basis for imposing liability against this parent corporation for the actions of its subsidiary under any theory. This Court agrees.

Although plaintiff interchangeably refers to CNAF and Continental as the entities that issued the Policy and subsequently issued the denial of coverage letters, the specific allegations in the complaint; the Policy's declaration page; plaintiff's notices of claims; and the two subsequent letters of declination all unequivocally refer to Continental as the issuer of the Policy. (See Compl. at ¶¶ 57-64; Notice of Removal at Exhs. B, D, E). Moreover, these documents demonstrate that plaintiff corresponded and met only with Continental's adjusters and investigators concerning the lead and sand claims, and that Continental was the company who ultimately denied the claims. None of these

documents even reference CNAF, except for the CNA service mark appearing in the top corner of these documents.[1]  Indeed, in the Complaint, plaintiff specifically alleges communications and investigations with "Continental."  Although the Complaint states that plaintiff notified and interacted with "CNA and Continental representatives," the Complaint expressly refers only to one representative, Robert Dudek, who is a Continental Executive General Adjuster.  (Compl. ¶¶ 57-64, and Exhs. D & E).

Although plaintiff generally argues that CNA, as the parent holding company, had "control" over Continental, its subsidiary, plaintiff makes no specific allegations demonstrating such control in the Complaint.  Indeed, plaintiff asserts no parent corporation theory of liability under agency principles or piercing the corporate veil in the Complaint.  In its legal brief, plaintiff merely relies on various annual financial reports publicly filed by CNAF to demonstrate CNAF's control over Continental's insurance business.  However, even assuming such documents were properly considered in connection with the parties' motions, the annual reports at best show a relationship between CNAF and all of its subsidiaries, including Continental.  These reports do not support any general allegation of control to establish CNAF's liability on plaintiff's claims.

On the other hand, defendants offer the affidavit of David Lehman, an Assistant Secretary of CNA wherein he states that:

1. CNAF, a publicly-traded holding company, "is not and has never been a licensed insurer in New Jersey or any other state.  CNAF does not engage in any of the activities traditionally undertaken by insurers."

---

[1] CNA is not a company affiliated with CNAF.  Rather, it is a service mark registered with the United States Patent and Trademark Office by CNAF.  CNAF's insurer subsidiaries are permitted to use this service mark and do use the service mark in their insurance underwriting and claims activities.  (See David Lehman Aff. at ¶ 3).

>    2.   CNAF did not offer, sell, issue, underwrite, or administer the Policy of plaintiff.
>
>    3.   "CNAF maintains its own books and accounting records[,] . . . . its own banking and financial accounts. Meetings of CNAF's board of directors are conducted separately from those of its subsidiaries and affiliates. Maintains its own by-laws, articles of incorporation, and corporate records."

Lehman Aff., at ¶¶ 2, 6-9.

In short, plaintiff neither alleges nor pleads sufficient facts to justify disregarding the corporate form and hold CNAF, a parent company, liable for acts of Continental, the company that actually issued the Policy to plaintiff. "Generally, a parent company is a distinct legal entity and will not be held liable for the acts of its subsidiary." Puglisi v. State Farm Mutual Automobile Ins. Co., Civ. No. 11-1914, 2011 WL 2448337, at * 2 (E.D. Pa. Jun. 20, 2011) (citing Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001)). A court may only disregard the corporate form and hold a parent company liable for the act of its subsidiary if the plaintiff demonstrates that the subsidiary acted as the parent's agent or if a basis exists to pierce the corporate veil. See Phoenix Canada Oil Co. Ltd. v. Texas, Inc., 842 F.2d 1466, 1476-78 (3d Cir. 1988).

In the Complaint, plaintiff does not even allege, let alone allege sufficient facts, to support any support any theory of control over Continental and/or agency theory, and thus, no colorable claim is alleged against CNAF. Accordingly, as this Court finds that there is no colorable claim asserted against CNAF, it has been fraudulently joined in this action. See, e.g., First Trenton Indem. Co. v. Chrysler Ins. Co., Civ. No. 10-2588, 2010 WL 3740841, at * 5 (D.N.J. Sept. 20, 2010) (in declaratory judgment action, Judge Debevoise finds, although defendant may have interest in outcome of action, there was " no possibility whatsoever that a state court would entertain a claim

against the defendant Moran, and rules that he was fraudulently joined as a defendant"). As such, the Court finds that CNAF should be disregarded for purposes of determining diversity jurisdiction. Having found that complete diversity exists among the proper parties, this Court respectfully recommends that the District Court deny plaintiff's cross-motion to remand on this basis.

The Court next considers whether the district court should decline to exercise its discretionary jurisdiction over the action and remand it to state court because, as plaintiff suggests, it is a declaratory judgment action involving purely an unsettled issue of state law on insurance coverage.

    2.  *Abstention*

"The Supreme Court has long held that federal courts should not abstain in diversity cases simply because state law is unclear." Empire Fire & Marine Ins. Co. v. Bennett, 2006 WL 932176, *1 (D.N.J. Apr. 10, 2006). Yet, a district court may abstain in certain circumstances. See id. (citing Louisiana Power and Light Co. v. City of Thibodaux, 360 U.S. 25 (1959) (finding that abstention was proper due to the "special and peculiar nature" of eminent domain proceedings)).

"The Declaratory Judgment Act ("the Act"), 28 U.S.C. §§ 2201 and 2202, provides a remedy that may be used by the federal courts in appropriate circumstances." State Auto Ins. v. Summy, 234 F.3d 131, 133 (3d Cir. 2001). Under the Act, a district court is charged with exercising its discretion to adjudicate declaratory judgment actions. Id. (citing 28 U.S.C. § 2201(a)). See Brillhard v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942). Following the reasoning of the Fourth Circuit, the Third Circuit has stated that "'Congress has afforded federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law [in declaratory judgment actions].'" Summy, 234 F.3d at 135 (quoting Mitcheson v. Harris, 952

F.2d 235, 238 (4th Cir. 1992)). Accordingly, the Third Circuit has determined that "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions." Id.

As detailed above, this action is not solely one for declaratory judgment. Rather, it revolves around the insurance coverage obligations of Continental and whether the company breached those obligations pursuant to the Policy. Additionally, it cannot be disputed that defendants removed this action based purely on diversity jurisdiction. They did not bring a declaratory judgment action in this Court, pursuant to the Declaratory Judgment Act, while leaving plaintiff's civil action pending in state court. Although plaintiff's abstention argument attempts to implicate the Act, this Court finds that because the case was not brought in state court under the Act or removed pursuant to the Act, the Court's discretionary abstention under Brillhart and Summy does not come into play. See Edwards & Caldwell LLC v. Gulf Ins. Co., Civ. No. 05-2231, 2005 U.S. Dist. LEXIS 27506, at *5-6 (D.N.J. Aug. 29, 2005) (quoting Marshall v. Lauriault, 372 F.3d 175, 183 (3d Cir. 2004) ("In [*Brillhart*], the Court held that when a federal suit is brought under the [DJA], presenting only questions of local laws, the court is under 'no compulsion to exercise [] jurisdiction' if a parallel state court proceeding would address the matters in controversy between the parties."))

However, even assuming, this action was purely one for declaratory judgment, the Court's would reach the same conclusion (i.e., that the discretion to abstain is absent and thus remand is inappropriate).

Recently, applying Third Circuit law, former Chief Judge Brown enunciated the factors relevant to determining the appropriateness of hearing a declaratory judgment action involving insurance coverage issues:

-11-

> First, there is '[a] general policy of restraint when the same issues are pending in state court.' . . . . Second, there is [a]n inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.' . . . . Third, there is the general policy of the '[a]voidance of duplicative litigation.'

Bennett, 2006 WL 932176 at * 3 (quoting Summy, 234 F.3d at 134).

First, and most significantly, the general policy of restraint is not involved here as plaintiff has not demonstrated that similar issues are pending in state court. Second, as defendants have not filed a declaratory judgment action in this court seeking to characterize its duty to defend in federal court as falling within the scope of a policy exclusion, but rather merely removed the then pending state court breach of contract and declaratory judgment action based solely on diversity jurisdiction, no inherent conflict exists. Third, there is no present concern to avoid duplicative litigation as there is no pending parallel state court action. Finally, the Court finds unpersuasive plaintiff's assertion that the court should abstain based on New Jersey's unsettled law on coverage under an "all-risks policy" based on defendants' expressed exclusions. Not only has the court's own research uncovered a plethora of cases addressing analogous exclusions under such policies, see, e.g., Port Authority of NY and NJ v. Affiliated FM Ins. Co., 311 F.3d 226 (3d Cir. 2002); Pittston Co. v. Allianz Ins. Co., 795 F. Supp. 678 (D.N.J. 1992); Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co., 406 N.J. Super. 524 (N.J. App. 2009); Simonetti v. Selective Ins. Co., 372 N.J. Super. 421 (N.J. App. Div. 2004), but in diversity cases, district courts are routinely called upon to interpret insurance contract terms under governing state law to ascertain their plain and ordinary meaning, which, as here, will turn on the specific facts of the case. Therefore, these factors, even if they were applicable, weigh against the district court exercising its discretion to abstain.

Accordingly, as this Court finds that the discretion to abstain is absent, the Court respectfully recommends that the district court deny plaintiff's cross-motion to remand the action to superior court on this basis.

### 3. *Failure To State A Claim*

Finally, for those reasons supporting a finding of fraudulent joinder, this Court concludes that, based on plaintiff's failure to plead any allegations of CNAF's control over Continental in the Complaint, plaintiff has failed to allege any basis to pierce the corporate veil, and thus fails to state a claim against CNAF for the actions of Continental in issuing and denying plaintiff's claims for coverage under the Policy.[2] As such, the Court respectfully recommends that the District Court grant defendants' motion to dismiss CNAF as a defendant.

## IV. CONCLUSION

For the reasons set forth above, this Court recommends that plaintiff's cross-motion to remand be **DENIED**, that defendants' motion to dismiss CNAF as a defendant for failure to state a claim be **GRANTED**, and that defendants' alternative request to dismiss CNAF for lack of personal jurisdiction be **DISMISSED AS MOOT**.

                                                       *s/Madeline Cox Arleo*
                                                       **MADELINE COX ARLEO**
                                                       **United States Magistrate Judge**

Dated: January 26, 2012

cc:    Clerk
        Hon. Susan D. Wigenton, U.S.D.J.
        All Parties
        File

---

[2] As the Court finds that plaintiff has not stated a claim against CNAF, the Court does not reach the merits of defendants' alternative argument to dismiss for lack of personal jurisdiction.